| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | |
| | * | **Crim. No. JKB-16-051** |
| **Antoine Washington,** | * | |
| *Defendant.* | * | |
| | * | |
| | ****** | |

**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS**

<u>INTRODUCTION</u>

The United States of America respectfully submits this consolidated response to the pretrial motions filed by Defendant Antoine Washington (1) Motion to Suppress Identification Evidence (ECF No. 13); (2) Motion to Dismiss Multiplicitous Indictment (ECF No. 14); and (3) Motion to Dismiss Indictment for Pre-Indictment Delay (ECF No. 15). All of the Defendant's motions should be denied.

<u>FACTUAL SUMMARY</u>

On December 28, 2011, Harford County investigators responded to the fatal heroin overdose of Victim 1. The homeowner, Witness 2, advised that he discovered Victim 1 unconscious on the couch. Witness 2 advised detectives that he had purchased the heroin ingested by Victim 1 before Victim 1's death, from a subject known as "Twan" in Towson, Maryland on December 27, 2011. Witness 2 also stated that he was introduced to "Twan" in early 2011, by Witness 1, and had purchased heroin numerous times from him. Based on the information received from Witness 2, investigators developed the defendant as the possible heroin dealer known as "Twan." On December 29, 2011, Witness 2 was shown an MVA photograph of the defendant. Witness 2 immediately recognized the photo as that of "Twan."

On December 20, 2012, a Grand Jury sitting in the United States District Court for the District of Maryland, in Baltimore, indicted Witness 2 on one count of conspiracy to distribute heroin the use of which resulted in death and one count of distribution of heroin, both in violation of 21 U.S.C. §846. Witness 2 was arrested on these charges on February 6, 2013. On that date, Witness 2 was shown a photo array containing a photo of the defendant. Witness 2 again positively identified the defendant as "Twan." The same photographic array was presented to Witness 1 on February 7, 2013, who also was able to positively identify the defendant as "Twan," the same person that he and Witness 2 utilized as a heroin source of supply. Witness 1 also stated that he had purchased heroin from the defendant multiple times weekly over a lengthy period of time.

Witness 2 subsequently plead guilty on February 25, 2014, and had sentencing hearings on November 21, 2014, and July 30, 2015. Following Witness 2's conviction and sentencing, the government continued to investigate the offense and the defendant's involvement in supplying the fatal dose of heroin.

On December 17, 2015, the defendant was charged by a criminal complaint with distribution and possession with intent to distribute heroin in connection with the death of Victim 1 in December of 2011. The defendant was indicted on February 17, 2016, on two counts: Count One: Distribution of heroin in which death resulted; and Count Two: Distribution of heroin.

SUMMARY OF ARGUMENT

The defendant attacks the government's case against him in three pretrial motions. First, his Motion to Suppress Identification Evidence (ECF No. 13) seeks to suppress identifications by two witnesses who identified him in photographic arrays. The United States does not intend to

offer evidence of the photo array shown to Witness 2 on February 6, 2013.  Witness 2 had previously identified the defendant in a single photo on December 29, 2011; therefore making the photo array cumulative and unnecessary.  Witness 1 had a prior course of dealing with the defendant, having purchased drugs from him on multiple occasions for many years.  The identification of the defendant is reliable and therefore the motion should be denied.

Second, the defendant argues that the indictment against him should be dismissed for having multiplicitous counts (ECF No. 14).  While the government concedes that Count Two (distribution of heroin) is a lesser included offense of Count One (distribution of heroin resulting in death), and that therefore only Count One should be submitted to the jury following trial in this matter, dismissal of the entire indictment on this basis is not appropriate.

Third, the defendant claims that the indictment should be dismissed for impermissible pre-indictment delay (ECF No. 15).  The defendant was indicted within the five-year statute of limitations and has not shown that he has suffered any prejudice from the supposed delay in his indictment.  Further, the government did not purposely delay the indictment to gain a tactical advantage over the defendant.  Therefore, dismissal on this ground in not appropriate.

1.    **The Defendant is Not Entitled to Suppression of the Identification Evidence.**

The defendant challenges the identification procedures of two witnesses – Witness 1 and Witness 2 -who identified him in photographic arrays.  In addition, the defendant seeks to block any attempted in-court identification of the defendant by these two witnesses.  As previously stated, the United States does not intend to present evidence of Witness 2's identification of the defendant through a photo array based on his previous identification of the defendant through a single photo.  Therefore, only the photo array identification by Witness 1 is at issue.  Witness 1

knew the defendant since approximately 2007 and had purchased drugs from him multiple times per week during that period of time.

In examining whether a pretrial identification is admissible, the Court conducts a two-part analysis. First, the burden is on the defendant to show that the identification procedure was impermissibly suggestive." *Neil v. Biggers*, 409 U.S. 188 (1972). Next, if the Court determines that the procedure was impermissibly suggestive, the Court looks at whether the identification was reliable despite being suggestive. *Id.; see also Manson v. Brathwaite*, 432 U.S. 98 (1977).

As the factors laid out in *Neil v. Biggers* suggest, identification evidence issues typically arise when there is a single crime, and the witness has encountered the suspect at the occasion of a crime. In those circumstances (as in a robbery or shooting), the manner in which a witness is presented a photograph of the suspect can be suggestive that the person in the photograph is the person that committed the crime. In a case such as this, however, in which the witnesses have met, and dealt with the defendant on numerous occasions, the risk that the witness will misidentify the suspect is greatly diminished, if not eliminated. Thus, the circumstances surrounding a photo array is not something a court will examine if the witness had ample time to observe the defendant. *See Holdren v. Legursky*, 16 F.3d 57, 61-62 (4th Cir. 1994) (holding that the court need not engage in a suggestiveness inquiry because the witness was able to observe the defendant for thirty minutes); *United States v. Pickett*, 174 Fed. Appx. 731, at *1 (4th Cir. 2006) (unpublished) (noting that the court need not inquire into the suggestiveness inquiry and finding the identification reliable because the witness had known the defendant for a period of several months).

In determining whether a suggestive identification is sufficiently reliable, courts look at several factors, including "1) the witness's opportunity to view the suspect at the time of the crime, 2) the witness's degree of attention at the time, 3) the accuracy of the witness's initial description of the suspect, 4) the witness's level of certainty when identifying the defendant and 5) the length of time between the crime and the identification." *Id.* "Exclusion of [identification] evidence from the jury is, however, a drastic sanction, one that is limited to identification testimony which is manifestly suspect." *Harker v. Maryland*, 800 F.2d 437, 443 (4th Cir. 1986).

The case at bar involves a witness who purchased heroin from the defendant on multiple occasions. Witness 1 was shown a photo array on February 7, 2013. Agents met up with Witness 1 at his place of residence and spoke with him in their car. While in the car, Agents did not have weapons drawn, they made no threats or promises and they had a relatively casual conversation with Witness 1. They explained why they were there and presented a series of eight folders to Witness 1. Prior to handing the folders to the witness, investigators read the following out loud to him, "This group of photographs may or may not contain a picture of the person that committed the crime now being investigated. Keep in mind that hair styles, beards and mustaches may be easily changed. Also photographs may not always depict the true complexion of a person, it may be lighter or darker than shown in the photo. When you have looked at all the photos tell me whether or not you see the person who committed the crime. Do not feel that you must make an identification. Do not tell other witnesses that you have or have not identified anyone." *See photo array.* Witness 1 did not appear to be under the influence of any drugs or alcohol and he indicated that he understood. Witness 1 was then handed eight folders, that Agents shuffled, two containing blank pages and six containing photos. The fairness of each of these arrays is apparent from the attached exhibits. *See photo array.* Each

consists of six color photographs of the same type and size depicting six similar-appearing individuals with the same color background. *See photo array.* After viewing the photos, Witness 1 identified the defendant, Antoine Washington as "Twan" his heroin supplier. Witness 1 then initialed the back of the photo to indicate which photo he selected. At no point did the Agents advise Witness 1 who to select. The Agent simply handed the witness the photos and allowed him to look through them in order to identify the person he knew as "Twan."

The defendant has made no argument that the photo array was impermissibly suggestive. Further the defendant has made no argument that the police used any suggestive tactics. Therefore, the defendant has not shown that the identification procedure was impermissibly suggestive and furthermore, since the witness knew the defendant, an analysis regarding the suggestiveness is unnecessary. In addition, based on the fact that both witnesses knew the defendant, there is no basis to suppress an in-court identification.

However, should the Court determine that the defendant has met his burden, the identifications is reliable nonetheless. Witness 1 knew the defendant since approximately 2007. During that time, the witness purchased heroin from the defendant numerous times per week over the course of a few years. Therefore, the witness had seen the defendant hundreds of times. Considering the fact that this is not a stranger on stranger situation; rather, a long term drug dealing/buying relationship, there is nothing to suggest the photo array identification is unreliable.

## 2. The Defendant is Not Entitled to Dismissal of the Indictment for Multiplicity.

The defendant asks that the indictment be dismissed because the two charges are multiplicitious and therefore violate the Fifth Amendment's prohibition against double jeopardy. The defendant was indicted on two counts: Count One: Distribution of heroin in which

death resulted; and Count Two: Distribution of heroin.   Both counts arise from the distribution on December 27, 2011, to Witness 2, which subsequently caused the overdose death of Victim 1.

Count Two is a lesser included offense of Count One.  Following presentation of the evidence at trial, a jury would be asked to determine whether the defendant distributed heroin on or about December 27, 2011, and if so, whether it caused the death of Victim 1.  The jury's determination of that second question, determines whether the defendant stands convicted on both counts, or only Count Two.  Clearly the defendant would not be sentenced to both counts as Count Two is a lesser included offense and cumulative punishments would be improper.  *See Rutledge v. United States,* 517 U.S. 292 (1996).  The government also notes this Court's preference in the unlikely event of a guilty plea, for the count of conviction either be in the indictment, or that the government file a superseding information.  As a matter of efficiency, the lesser included count is present.  There is no basis for dismissal of the indictment.  This motion should be denied.

### 3.  There was No Impermissible Delay in Bringing the Indictment against the Defendant.

The defendant claims that the indictment should be dismissed due to unconstitutional pre-indictment delay.  The defendant –who was indicted comfortably within the five-year statute of limitations applicable to federal drug offenses, *see* 18 U.S.C. §3282- has not shown that he has suffered any prejudice from the supposed delay in his indictment, nor that the government's timing of the indictment was based on any impermissible consideration.

A defendant who seeks dismissal of a criminal case based on the government's delay in indicting bears a heavy burden. *See United States v. Shealey*, 641 F.3d 627, 633-34 (4th Cir. 2011).   In order for dismissal to be appropriate, the defendant must show substantial prejudice to his right to a fair trial and also that the government intentionally delayed the indictment to gain a

tactical advantage over the defendant. *United States v. Marion,* 404 U.S. 307 (1971). The

Supreme Court has laid out a two-part test. The first prong examines whether the defendant has

shown actual prejudice. If, and only if, the defendant makes such a showing, the court must look

at the government's reasons for the delay and engage in a balancing test. *United States v. Uribe-*

*Rios*, 558 F.3d 347, 358 (4th Cir. 2009) (citing *United States v. Automated Med. Labs, Inc.*, 770

F.2d 399, 403 (4th Cir. 1985)). In conducting the balancing test, the indictment should stand

unless the reviewing court finds the delay "violates fundamental conceptions of justice or the

community's sense of fair play and decency." *United States v. Automated Med. Labs, Inc.,* 770

F.2d 399, 404 (4th Cir. 1985) (quoting *United States. v. Lovasco*, 431 U.S. 783 (1977)). "[T]he

Due Process Clause does not permit courts to abort criminal prosecutions simply because they

disagree with a prosecutor's judgment as to when to seek an indictment." *Lovasco*, 431 U.S. at

790.

      Here, the defendant alleges that the pre-indictment delay prejudiced him in that he is no

longer able to identify potential alibi witnesses or obtain other evidence to establish an alibi.

However, the defendant has not shown any *actual* prejudice. The defendant has not named any

particular alibi witnesses who are no longer available, stated any specific evidence that has been

lost due to the passage of time, or indeed, provided any specific facts showing that he will be

disadvantaged by the delay in bringing him to trial. The Supreme Court rejected similarly

generic claims of prejudice caused by pre-indictment delay in *Marion*, where the defendants

alleged prejudice based on the mere passage of time, relying on the possibility that "memories

will dim, witnesses become inaccessible, and evidence be lost." 404 U.S. at 325. The Court

found that "these possibilities are not in themselves enough" to warrant a dismissal. *Id.* In this

case too, the defendant has not met his burden showing actual prejudice and therefore the analysis should end.

However, if the Court finds that the defendant has met his burden with regards to the first part of the test, the next step is to look at the government's reasoning for the delay in indictment and balance that with the prejudice shown by the defendant. The Court is to specifically look at whether the government's actions were intentional to "gain some tactical advantage." *Id.* Here, the offense occurred on December 27, 2011, and the defendant was formally indicted on February 17, 2016. In the time between the offense and the defendant's indictment, Witness 2 was investigated and charged, plead guilty and was sentenced. The government continued to investigate the offense and the defendant's involvement. As the investigation continued, the government chose to file charges against the defendant in the instant case. However, the investigation is still ongoing at this time. On May 16, 2016, a Criminal Complaint was filed against Alexander Campbell, charging him with conspiracy to distribute and possess with intent to distribute heroin. In that complaint, the allegations set forth that Campbell and the defendant are co-conspirators in a heroin trafficking organization which has operated in Northeast Baltimore for many years. A superseding indictment against the defendant on related conspiracy charges with Campbell is forthcoming. There is no basis to conclude that the delay in the indictment was based on a desire by the government to gain a tactical advantage, nor any other impermissible consideration. Therefore, the motion to dismiss the indictment should be denied.

<u>CONCLUSION</u>

The government respectfully requests that the defendant's pretrial motions be denied.

Respectfully submitted,

ROD J. ROSENSTEIN
United States Attorney

By:      _____/s/_____
         Leo J. Wise
         Assistant United States Attorney
         36 S. Charles St., 4th Fl.
         Baltimore, Maryland 21201


         _____/s/_____
         Keri L. Borzilleri
         Special Assistant United States Attorney
         36 S. Charles St., 4th Fl.
         Baltimore, Maryland 21201


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was electronically filed with

notice to counsel of record: Strider L. Dickson, Esq.


         _____/s/_____
         Leo J. Wise
         Assistant United States Attorney