# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. JKB-16-51** |
| **v.** | |
| **ANTONIO SHROPSHIRE,**<br>**a/k/a/ "Brill", a/k/a "B", a/k/a "Tony",** | |
| **OMARI THOMAS,**<br>**a/k/a "Lil' Brill", a/k/a "Lil B", a/k/a/ "Chewy",** | |
| **ANTOINE WASHINGTON,**<br>**a/k/a "Twan",** | |
| **ALEXANDER CAMPBELL**<br>**a/k/a "Munch",** | |
| **GLEN KYLE WELLS**<br>**a/k/a "Lou", a/k/a "Kyle",** | |
| **and** | |
| **MOMODU BONDEVA KENTON GONDO,**<br>**a/k/a "GMoney", a/k/a "Mike",** | |
| *Defendants.* | |

## GOVERNMENT'S CONSOLIDATED RESPONSE IN OPPOSITION
## TO DEFENDANTS' PRETRIAL MOTIONS

# TABLE OF CONTENTS

INTRODUCTION................................................................................................................. 1

FACTUAL SUMMARY ...................................................................................................... 2

    A.    Overview ................................................................................................................ 2

    B.    Procedural History................................................................................................. 2

    C.    The Third Superseding Indictment Charges a Drug Trafficking Conspiracy in Count One, and Alleges as Overt Acts in Furtherance of the Conspiracy Specific Acts of Heroin Distribution by the Defendants and Overdoses Caused by the Defendants.................................................. 4

    D.    Similar Evidence Used to Establish Overt Acts in Furtherance of the Conspiracy Will Also be Used to Prove Substantive Distribution Counts Two through Seven in the Third Superseding Indictment. ....................................................................................... 7

    E.    The United States Does Not Intend to Use at Trial Evidence Seized During the Execution of a State Search Warrant From Defendant Shropshire's Residence and From a Subsequent Search of a Vehicle at the Residence. ............................................................... 8

    F.    The DEA Executed a Federal Arrest Warrant for Defendant Campbell, Arrested Him, Searched Him Incident to His Arrest, and Searched a Vehicle in Which Defendant Campbell Had Been a Passenger and Had No Reasonable Expectation of Privacy. ................................ 8

ARGUMENT ...................................................................................................................... 12

I.    Defendant Washington's Motion to Sever Defendants and Motion to Sever Counts (ECF Nos. 75 and 160) and Defendant Campbell's Motion for Relief from Prejudicial Joinder (ECF 77) Should be Denied. ................................................................................................................ 12

    A.    Defendant Campbell's Improper Joinder Claim Fails Because Counts One and Two, and Defendants Campbell and Washington, are Properly Joined in the Third Superseding Indictment Pursuant to Fed. R. Crim. P. 8. ......................................................................... 12

    B.    Defendant Washington and Defendant Campbell's Motions for Severance of *Count Two* Fail to Make a Strong Showing of Prejudice and This Case is Not a "Rare Case". ................. 15

    C.    Defendant Washington and Defendant Campbell's Motions for Severance of *Defendants* Fail to Make a Strong Showing of Prejudice and This Case is Not a "Rare Case". ................. 19

        1.    Severance is Not Appropriate Simply Because Evidence Against Another Defendant is Purportedly Stronger or More Inflammatory and Defendant Campbell's Severance Request Fails To Establish a Strong Showing of Prejudice............................................................. 20

        2.    Defendant Washington's "Finger-Pointing" at Co-Defendant Campbell is an Insufficient Basis for Severance. ................................................................................... 21

        3.    Defendant Washington's Claim That Defendant Campbell Will Testify as a Witness on His Behalf is Highly Improbable and this Unlikely Assertion Alone Does Not Warrant Severance. ............................................................................................................... 22

        4.    There Are No *Bruton* or *Crawford* Issues Posed by a Joint Trial with Defendant Washington and Defendant Campbell. ................................................................. 22

5. Defendant Washington Is Not Prejudiced By Rule 404(b) Evidence the Government May Use Against Defendant Campbell. .................................................................................. 24

II. Defendant Washington's Motion to Suppress Identification Evidence and Request for Evidentiary Hearing Should be Denied (ECF No. 161) ............................................................ 24

III. Defendant Washington's Motion for Disclosure Pursuant to Fed. R. Evid. 404(b) and 609 should be Denied as Moot (ECF No. 76). ....................................................................... 26

A. Washington's Relevant Criminal History ....................................................... 27

B. Campbell's Relevant Criminal History ........................................................... 28

C. Shropshire's Relevant Criminal History ......................................................... 28

D. Wells' Relevant Criminal History ................................................................... 29

IV. Defendant Campbell's Motion to Suppress Statements (ECF 79) and Motion to Suppress Tangible and Derivative Evidence (ECF 81) Should be Denied. ................................................. 30

A. In light of the Government's Concession regarding One Pre-Miranda Question and Answer, Defendant Campbell's Other Statements Were Not Elicited in Violation of his Fifth Amendment Rights and Should Not Be Suppressed. .................................................. 30

1. The United States Does Not Intend to Use Campbell's Statement to Detective Vivino Prior to his Transport. ......................................................................... 31

2. Defendant Campbell's Statements to Law Enforcement After His Arrest and During Transport Were Voluntary and Not the Product of Questioning Designed to Elicit an Incriminating Response. ................................................................... 31

3. Defendant Campbell Made a Knowing and Voluntary Waiver of His Fifth Amendment Rights After Signing a *Miranda* Form and Consenting to an Interview at the Precinct. ...... 32

B. The DEA Lawfully Seized Evidence From Defendant Campbell's Person and Ms. Davis's Acura When Defendant Campbell was Arrested Pursuant to an Arrest Warrant. ........ 33

1. Defendant Campbell Does Not Have A Reasonable Expectation of Privacy in Ms. Davis' Acura. ................................................................................................. 33

2. The Search of Defendant Incident to His Arrest Was Valid Because Law Enforcement Had a Federal Arrest Warrant for Defendant Campbell. ...................................... 33

3. Even if the Court Assumes Defendant Campbell has Standing to Contest a Search of Ms. Davis's Acura, Law Enforcement Was Authorized to Search the Acura Incident to Defendant Campbell's Arrest, or Alternatively, Pursuant to the Automobile Exception. ..... 35

V. Defendant Campbell's Motion for Leave to Amend, Supplement, Withdraw and/or File Additional Motions (ECF 78) and Defendant Campbell's Motion to Adopt Motions of Co-Defendants (ECF 80) Should be Denied. ........................................................................ 37

VI. Defendant Shropshire's Omnibus Motions (ECF No. 144) Have No Merit and Should be Denied. .............................................................................................................. 37

A. Shropshire's 12(b)(4)(B) Designation Request is Moot. .............................. 37

B. The Defendant's Motion Should be Denied as Moot Because the Defendant Agreed to an Early Jencks Discovery Deadline of One Week Prior to Trial. ................................. 38

ii

C.    The United States Defers to the Court Regarding its Preferences and Standard Practices for Voir Dire. ................................................................................................................ 39

D.    Shropshire's Request for Leave to File Additional Motions Should be Denied. ........... 39

**VII.**   Defendant Shropshire's Motion to Suppress Evidence Seized from the Residence Located at 3007 Harview Avenue Pursuant to a State Search and Seizure Warrant Should be Denied as Moot (ECF No. 145). .................................................................................................................. 39

**CONCLUSION** ............................................................................................................... 40

## INTRODUCTION

The United States of America, through its undersigned attorneys, respectfully submits this consolidated response in opposition to eleven pretrial motions filed by the Defendants:

1. ECF 75 – Defendant Washington's Motion to Sever Defendants

2. ECF 76 – Defendant Washington's Motion for Disclosure Pursuant to Fed. R. Evid. 404(b) and 609

3. ECF 77 – Defendant Campbell's Motion for Relief from Prejudicial Joinder

4. ECF 78 – Defendant Campbell's Motion for Leave to Amend, Supplement, Withdraw, and/or File Additional Motions

5. ECF 79 – Defendant Campbell's Motion to Suppress Statements

6. ECF 80 – Defendant Campbell's Motion to Adopt Motions of Co-Defendants

7. ECF 81 – Defendant Campbell's Motion to Suppress Tangible and Derivative Evidence

8. ECF 144 – Defendant Shropshire's Omnibus Pretrial Motions

9. ECF 145 – Defendant Shropshire's Motion to Suppress Evidence Seized from 3007 Harview Avenue

10. ECF 160 – Defendant Washington's Motion to Sever Counts

11. ECF 161 – Defendant Washington's Motion to Suppress Identification Evidence and Request for Evidentiary Hearing

Defendants Gondo and Thomas did not file pretrial motions.  Defendant Wells is a federal fugitive.  For the reasons explained below, the motions filed by the remaining Defendants – Washington, Campbell, and Shropshire – are meritless and should be denied.  The Government believes that an evidentiary hearing may be necessary only with respect to issues raised by ECF 79 and ECF 81, and these motions should be denied after the hearing.  The Government believes that all other motions can be denied based on the filings and briefs alone or, alternatively, after hearing legal argument of the parties at the motions hearing presently scheduled for May 23, 2017.

1

## FACTUAL SUMMARY

### A.      Overview

For more than seven years, the Defendants operated a lucrative heroin trafficking business in Baltimore, Maryland, and profited immensely from illegal drug sales to customers.   The Defendants maintained their drug territory at the Alameda Shopping Center where the Defendants distributed narcotics to a loyal customer base, many of whom drove to Baltimore from neighboring Maryland counties, elsewhere in Maryland, and other states in order to buy heroin from the Defendants.  On February 23, 2017, a federal grand jury returned the Third Superseding Indictment charging six Defendants with conspiracy to possess with intent to distribute heroin and other substantive narcotics offenses.  (ECF 123).  The conspiracy began no later than the beginning of 2010, and continued through on or about the date of the Third Superseding Indictment.  (ECF 123, p. 2).  The Third Superseding Indictment charges overt acts in furtherance of the conspiracy in Count One and, included in those overt acts, Defendants Washington, Shropshire, Campbell, and Gondo are alleged to have trafficked heroin on specific dates during the conspiracy (ECF 123, ¶¶ 3(a)-(e), 4).  These same dates and acts of heroin distribution in furtherance of the conspiracy are also charged as standalone narcotics distribution counts (or possession with intent to distribute counts), all of which occurred during the period of the charged conspiracy.  (ECF 123, *See* Counts Two through Seven).

### B.      Procedural History

Defendant Washington was charged by Indictment on February 17, 2016, and was subsequently arrested on February 26, 2016.  The Indictment charged that, on December 27, 2011, Defendant Washington distributed heroin and death resulted from the use of said substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C).  Defendant Washington filed a number of pretrial motions (*see e.g.* ECF 13, 14, 15, 16, and 17) and the United States filed a consolidated

response to the motions.  (ECF 33).  The Court held a motions hearing on July 5, 2016 and the Government presented evidence at this hearing with respect to the Defendant's Motion to Suppress Identification Evidence (ECF 13).  The Court made findings on the record, issued rulings on the record, and thereafter issued an Order summarizing its rulings on Defendant Washington's motions, including Defendant Washington's Motion to Suppress Identification Evidence.  (ECF 39).  During each ensuing status conference with the parties, Judge Bredar explained that these rulings became *the law of the case*.

A Special Grand Jury returned a Superseding Indictment on August 31, 2016, which added Alexander Campbell as a defendant and charged Defendant Washington, Defendant Campbell, and others known and unknown to the Grand Jury in Count One with conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 846.  Count One of the Indictment became Count Two of the Superseding Indictment.  Counts Three and Four charged Defendant Campbell with distribution of heroin or possession with intent to distribute heroin on May 10, 2016 and May 24, 2016, respectively, in violation of 21 U.S.C. §§ 841(a) .  Defendants Campbell and Washington thereafter timely filed pretrial motions (ECF 75, 76, 77, 78, 79, 80, and 81).

A Special Grand Jury returned a Second Superseding Indictment on November 17, 2016, which added Defendant Shropshire and Defendant Thomas as defendants and co-conspirators of Defendant Washington and Defendant Campbell in Count One.  Counts Two through Four remained unchanged.  Defendant Shropshire timely filed pretrial motions (ECF 144 and 145).

Finally, a Special Grand Jury returned the Third Superseding Indictment on February 23, 2017, which added Defendant Gondo and Defendant Wells as Defendants and co-conspirators in Count One.  The Third Superseding Indictment included specific factual allegations and overt acts

3

in furtherance of the conspiracy in Count One.  Count Two remained the same.  Counts Three and Four in the Second Superseding Indictment were moved to Counts Four and Five in the Third Superseding Indictment.  Counts Three, Six and Seven were added against Defendant Shropshire or Defendant Gondo, and these Counts charged them with distribution of narcotics or possession with intent to distribute narcotics in violation of 21 U.S.C. §§ 841(a).  In sum, Count One of the Third Superseding Indictment charged all six Defendants with conspiracy to distribute heroin in violation of § 846, and Counts Two through Seven charged four of the Defendants with narcotics distribution offenses in violation of § 841 which had occurred during the period of the conspiracy.

During the Court's telephone scheduling conference on March 22, 2017, the Court reminded the parties (and new counsel for Defendant Washington) of the prior evidentiary hearing and explained that the Court's prior rulings were the law of the case.  Defense counsel for Mr. Washington asked the Court for leave to file additional pretrial motions *with respect to new issues raised by the Third Superseding Indictment that had not been raised by the prior indictments.*  The Court granted this request during the call, and noted that counsel should be aware of its prior rulings and the law of the case.  However, Defendant Washington apparently disregarded the law of the case and filed pretrial motions (ECF 160 and 161) which addressed issues that were not raised for the first time by the Third Superseding Indictment, including a duplicative motion that the Court had already previously addressed at the prior motions hearing.

C.     **The Third Superseding Indictment Charges a Drug Trafficking Conspiracy in Count One, and Alleges as Overt Acts in Furtherance of the Conspiracy Specific Acts of Heroin Distribution by the Defendants and Overdoses Caused by the Defendants.**

According to the Third Superseding Indictment, members of the conspiracy, known to law enforcement as the Shropshire Drug Trafficking Organization, collectively distributed multiple kilograms of heroin to customers throughout the Baltimore area during the course of the seven-

4

year conspiracy beginning in 2010 and continuing through on or about the date of the Third Superseding Indictment – February 23, 2017.  (ECF 123 ¶¶ 1(a), 3).  In furtherance of this conspiracy, the Third Superseding Indictment alleges: (1) Defendant Shropshire distributed 10 grams of heroin to an undercover officer on July 15, 2015, (2) Defendant Campbell distributed 2 grams of heroin to a confidential source on May 10, 2016, (3) Defendant Campbell possessed with intent to distribute 16 grams of heroin on May 24, 2016 when he was arrested, (4) Defendant Gondo possessed with intent to distribute 27 gel capsules of heroin on August 30, 2016 when law enforcement discovered heroin in a vehicle he operated, and (5) Defendant Shropshire possessed with intent to distribute 17 grams of heroin on November 30, 2016 when he was arrested.  (ECF 123 ¶ 3(a)-(e)).

Overt acts included in Count One allege that the conspiracy, in which all Defendants were members, caused fatal and nonfatal overdoses.  (ECF 123 ¶ 4).  During the alleged conspiracy, on December 27, 2011, the Third Superseding Indictment alleges that (6) Defendant Washington distributed heroin in furtherance of the conspiracy, and J.L died as a result of the distribution of this substance.  (ECF 123 ¶ 4).  Among the manner and means of the conspiracy, the Defendants and others are alleged to have "distributed heroin to customers, which resulted in multiple overdoses, including overdose deaths."  (ECF 123 ¶ 1(b)).  At trial, the United States intends to introduce evidence, including text messages, which show that some members of the conspiracy *knew* that their customers were overdosing off of the heroin but nonetheless continued to act in furtherance of the conspiracy to distribute the deadly substance (e.g., "I got da super fire ppl went out off it . . .").  The United States also intends to introduce evidence, including testimony from customers, who will testify that Defendants Washington, Campbell and Shropshire knew that customers overdosed on their heroin, and that Defendants boasted about the fact that their heroin

caused people to overdose, to go to the hospital, or to die, in order to get addicts to buy their stronger product.

Defendant Washington was initially charged by Indictment with a single count of distribution of heroin resulting in the death of J.L. (ECF 1). After his arrest, and while his co-defendants were continuing his drug operation, Defendant Washington used the jail phone system at the Chesapeake Detention Facility to facilitate the operations of the Shropshire Drug Trafficking Organization. Defendant Washington and his co-conspirators – Defendant Campbell and Defendant Wells – made several incriminating statements in furtherance of the conspiracy on recorded jail calls. These calls included: (1) discussions about obtaining heroin from the organization's sources of supply, (2) conversations about the significant quantities of heroin received from sources of supply and the prices paid for the heroin, (3) discussions about the identities of customers and instructions about how to transact heroin with certain customers, (4) admonishments to co-conspirators about the methodologies used by the organization regarding switching phones to avoid law enforcement detection of the criminal enterprise, and (5) references to the identities of co-conspirators who had teamed up to run the Shropshire Drug Trafficking Organization and whom Defendant Washington made plans to continue his business with after he was released from prison. (ECF 123 ¶¶ 5-9). For example, in a December 30, 2015 jail call, Defendant Washington referenced the identifies of his other co-conspirators (referred to as "the team"), when he told Defendant Campbell about his plans after he was released from prison: "I'm getting the team back, me, Brill [Defendant Shropshire], Lou [Defendant Wells], and you, doing everything boss shit like I'm supposed to be doing, it's going to be hard for niggers to get to me." (ECF 123 ¶ 5).

The DEA initiated a Title III wiretap investigation involving phones used by two of Defendant Washington's suspected co-conspirators -- Defendant Shropshire (one of the "team" members referred to by Defendant Washington in the jail call) and Defendant Thomas, a street lieutenant and distributor of heroin for Defendant Shropshire.   The intercepted phone calls involving Defendant Shropshire and Defendant Thomas established that both Defendant Shropshire and Defendant Thomas worked together to distribute significant quantities of heroin to customers on behalf of the conspiracy.  (*See e.g.* ECF 123 ¶¶ 10-12, 16-17).  The FBI also initiated a Title III wiretap investigation involving Defendant Gondo's phones.   During the course of the wire investigations, law enforcement learned that Defendant Gondo provided intelligence and assistance to members of the conspiracy, including Defendant Shropshire and Defendant Wells, and committed other acts in furtherance of the conspiracy.[1]   (*See e.g.,* ECF 123 ¶¶ 13-15, 22-32).

> **D.      Similar Evidence Used to Establish Overt Acts in Furtherance of the Conspiracy Will Also be Used to Prove Substantive Distribution Counts Two through Seven in the Third Superseding Indictment.**

The Third Superseding Indictment alleges that members of the conspiracy trafficked heroin on December 27, 2011 (Washington distributed heroin to J.L., ¶4); July 15, 2015 (Shropshire distributed heroin to an undercover officer ¶3(a)); May 10, 2016 (Campbell distributed heroin to CI ¶3(b)); May 24, 2016 (Campbell possessed with intent to distribute heroin when arrested ¶3(c)); August 20, 2016 (Gondo possessed with intent to distribute heroin which he kept in a vehicle he used ¶3(d)); and November 30, 2016 (Shropshire possessed with intent to distribute heroin at his arrest ¶3(e)).  These overt acts are also charged as substantive distribution counts in violation of 21 U.S.C. § 841, and are alleged as counts Two through Seven, respectively.  Similar evidence presented for Counts Two through Seven will be presented for Count One.

---

[1] The Defendants do not challenge any of the Title III wiretaps or interceptions of the Defendants.

E. **The United States Does Not Intend to Use at Trial Evidence Seized During the Execution of a State Search Warrant From Defendant Shropshire's Residence and From a Subsequent Search of a Vehicle at the Residence.**

During the course of the DEA investigation, the Baltimore Police Department ("BPD") obtained a state search warrant for Defendant Shropshire's residence at 3007 Harview Avenue, Baltimore, Maryland. During the search of Shropshire's residence, law enforcement seized a firearm, heroin, drug packaging materials, cash, a hydraulic press used to press heroin into form, and other items. After a canine alerted positively to the detection of narcotics in a 2005 Kia Soul parked in Shropshire's driveway, law enforcement searched the vehicle and seized cash, mixing agents, a phone, and a KGB Sluethgear Brand Wireless Detector/Camera Finder used to locate wireless electronic equipment. While the Government reserves the right to use this evidence in other proceedings, including potential separate charges against Defendant Shropshire, the Government represents that it does not intend to use this evidence in a trial in this case.[2]

F. **The DEA Executed a Federal Arrest Warrant for Defendant Campbell, Arrested Him, Searched Him Incident to His Arrest, and Searched a Vehicle in Which Defendant Campbell Had Been a Passenger and Had No Reasonable Expectation of Privacy.**

On May 16, 2016, the Honorable Stephanie A. Gallagher, United States Magistrate Judge, District of Maryland, authorized an arrest warrant for Defendant Campbell based on a Criminal Complaint (ECF 18) alleging the Defendant violated 21 U.S.C. § 846, conspiracy to distribute heroin. (*See* Exhibit 1). The Criminal Complaint was supported by the affidavit of Drug Enforcement Administration Task Force Officer David McDougall, Jr.

---

[2] The Defendant has limited his motion to suppress to items seized pursuant to a state search warrant for 3007 Harview Avenue. The Defendant does not challenge a separate state search warrant authorized for Defendant Shropshire's person or the admissibility at trial of items seized from Defendant Shropshire during the execution of that search warrant, including approximately 25 grams of heroin, cash, three phones and other items.

8

On May 24, 2016, TFO McDougall and members of the Harford County Task Force conducted surveillance in the area of Loch Raven Boulevard and Northern Parkway in an attempt to locate Defendant Campbell and execute the federal arrest warrant. (*See* Exhibit 2 at 1). At approximately 6:00 p.m., law enforcement observed Defendant Campbell enter the passenger seat of an Acura TL driven by Tyteona Davis. (*Id.* at 1). The Acura was registered to and owned by Tyteona Davis, and it was not owned by or registered to Defendant Campbell. (*See* Exhibit 3). There were two minor children in the backseat of Ms. Davis' Acura when Defendant Campbell entered the passenger seat. (*See* Exhibit 2 at 1). Law enforcement followed Ms. Davis' Acura to an Exxon gas station located at 5656 The Alameda, Baltimore, Maryland. (*Id.* at 1). Ms. Davis stopped her Acura in the parking lot and law enforcement vehicles pulled behind the Acura to make an arrest of Defendant Campbell, who was seated in the passenger seat. (*Id.* at 1). After Defendant Campbell refused to obey law enforcement commands and exit Davis' Acura, Defendant Campbell and the other occupants of Ms. Davis' vehicle were removed by law enforcement. (*Id.* at 2). Defendant Campbell resisted arrest and law enforcement took him to the ground to complete the arrest and place him in handcuffs. (*Id.* at 2).[3] In this process, a cellular flip phone fell from Defendant Campbell's person to the ground. (*Id.* at 2).

Once Defendant Campbell was detained, a search incident to arrest was completed by law enforcement and a plastic bag containing approximately 16 grams of suspected heroin was found in Defendant Campbell's front left pocket. (*Id.* at 2). Law enforcement also found $362 in cash in the same pocket as the recovered heroin. (*Id.* at 2).[4] TFO McDougall seized the heroin and

---

[3] As discussed below, Defendant Campbell has a violent criminal history which includes two Second Degree Assault convictions.

[4] After Defendant Campbell was placed in handcuffs, Detective Vivino asked Campbell how much heroin he had located in Defendant Campbell's left pocket, and Campbell stated "it's like 10

money recovered from Defendant Campbell's person as well as the cellular flip phone that has been dropped by Defendant Campbell.  (*Id.* at 2).

After discovery of the suspected heroin and cash from Defendant Campbell's person, Detectives initiated a search of the passenger seat where Defendant Campbell had just been seated immediately prior to his arrest.  (*Id.* at 2).  A second cellular flip phone was on the passenger seat, and a third cellular flip phone was then located in the center console of the vehicle.  (*Id.* at 2).  Law enforcement also found a digital scale with suspected drug residue in the map book pocket of the passenger door where Campbell had been sitting prior to his arrest.  (*Id.* at 2).  These items were seized by TFO McDougall.  (*Id.* at 2).

Detectives then observed a large sum of money falling from Ms. Davis' rear pocket of her hospital scrubs.  (*Id.* at 2).[5]  The money was in an older-looking bank envelope.  (*Id.* at 2).  Sergeant Royster began to question Ms. Davis about the money, and Ms. Davis said she did not know how much money she had and she could not produce withdrawal slips to account for the money even though she maintained that she had withdrawn it recently.  (*Id.* at 2).  TFO McDougall seized the money, which totaled $2,260.  (*Id.* at 2).

After the search of Ms. Davis' Acura was completed, law enforcement transported Defendant Campbell to the Baltimore County Parkville Precinct.  (*Id.* at 2).  During the ride, Defendant Campbell made the following unsolicited statements: (1) he requested to stop at 1208 Glen Haven to speak with his mother; (2) he asked, "Who is your informant?"; (3) he stated, "You always have an informant"; (4) he began to ask questions about his brother, Antoine Washington,

---

grams".  The Government represents that this question and response occurred pre-*Miranda* and the Government will not use this statement at trial.

[5] Ms. Davis, an unindicted co-conspirator, is not a Defendant in this case.

and the facts of his arrest; and (5) he stated, "I don't have any bodies on me" in apparent reference to Defendant Campbell's contention that law enforcement could not prove that Defendant Campbell sold heroin to a user who ultimately died from using the heroin.  (*Id.* at 2).

After Defendant Campbell arrived at the Precinct, TFO Battee read Defendant Campbell his *Miranda* rights.  Campbell verbally acknowledged he understood his rights.  Defendant Campbell also signed a Baltimore County *Miranda* waiver form.  (Exhibit 4).  After signing the form, Defendant Campbell was asked questions by law enforcement and made the following additional statements in response to the following questions:  (6) Defendant Campbell was asked about the money that Ms. Davis had in her pocket, and Defendant Campbell stated that Ms. Davis holds the money for Defendant Campbell because she can count better than him; (7) Defendant Campbell stated that he does not have a good source for heroin; (8) Defendant Campbell said, "I call around to corner boys to get grams."; (9) when Defendant Campbell was asked about how many grams he gets at a time, Defendant Campbell said, "like 20 grams"; and (10) Campbell stated he was done with "this life", referring to selling drugs, and that he was going to get a job when he finished with this situation (Exhibit 2 at 3).

**ARGUMENT**

**I.   Defendant Washington's Motion to Sever Defendants and Motion to Sever Counts (ECF Nos. 75 and 160) and Defendant Campbell's Motion for Relief from Prejudicial Joinder (ECF 77) Should be Denied.**

Although Defendants Washington and Campbell seek severance for various unsupported reasons (each of which will be addressed below), the gist of their motions show one common concern – the Defendants want to limit the Government's ability to present evidence of overdoses caused by the Defendants' distribution of heroin.   Specifically, Defendants Washington and Campbell contend that Count Two, charging Defendant Washington with distribution of heroin resulting in death, is prejudicial to the Defendants' defense of Count One, charging all Defendants with conspiracy to distribute and possess with intent to distribute heroin.   These arguments are meritless; the Defendants and Counts are properly joined and this Court should not sever the Defendants or Counts.   The Court should instead deny the Defendants' motions.

**A.   Defendant Campbell's Improper Joinder Claim Fails Because Counts One and Two, and Defendants Campbell and Washington, are Properly Joined in the Third Superseding Indictment Pursuant to Fed. R. Crim. P. 8.**

Defendant Campbell alleges that Counts One and Two are improperly joined under Fed. R. Crim. P. 8(a) and Defendants Campbell and Washington are improperly joined under Fed. R. Crim. P 8(b).   (*See* ECF 77).   There can be no dispute that Counts One and Two, and Defendants Campbell and Washington, are properly joined in the Third Superseding Indictment.   Fed. R. Crim. P. 8(a) permits joinder of separate offenses where "the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with a common plan or scheme."   The Fourth Circuit "ha[s] interpreted the latter two prongs of [Rule 8(a)] flexibly, requiring [only] that the joined offenses have a 'logical relationship' to one another." *United States v. Cardwell*, 433 F.3d. 378, 385 (4th Cir. 2005) (noting that "Rule 8(a) permits very broad joinder because of the efficiency in trying the defendant on related counts in the same trial").   Furthermore,

12

Fed. R. Crim. P. 8(b) permits joinder of separate defendants if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The rule provides that "defendants may be charged *in one or more counts together or separately.  All defendants need not be charged in each count.*"  *Id.*

Count One charges Defendant Washington and the other Defendants, including Defendant Campbell, with conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. § 846, and furthermore alleges that Defendant Washington's distribution of heroin to J.L. on December 27, 2011 was an overt act in furtherance of the conspiracy and J.L. died as a result of the distribution of this substance.  Count Two is a standalone distribution count charging Defendant Washington with distribution of heroin to J.L. on December 27, 2011, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C), and death resulted from the use of the substance.  The joinder of these two Counts is appropriate and meets *all three* of the independent bases covered by Rule 8(a).  First, Counts One and Two are of the same or similar character because the Government will present the same evidence in support of Count Two as it will in support of Count One, and both Counts involve the same acts of heroin distribution and an ensuing overdose fatality caused by Defendant Washington's distribution.  The evidence presented by the United States for Counts One and Two will include facts involving the overdose death of J.L., the Defendants' boasting of overdoses when marketing their heroin product to customers, and text messages and calls to customers advertising overdoses caused by their heroin product.  Second, the evidence presented in both Counts One and Two is based on the same act or transaction – the specific distribution of heroin to J.L. is charged as an overt act in furtherance of the conspiracy in Count One and as a substantive count in Count Two.  Third, Count Two is connected with a common plan or scheme presented in Count One, the conspiracy to distribute heroin, and the

conduct involved in Count Two occurs during the course of the charged conspiracy.   The distribution of heroin resulting in the death of J.L. is an overt act in furtherance of the conspiracy in which Defendant Campbell and Defendant Washington both joined and participated.   Therefore, Count Two of the Third Superseding Indictment is properly joined with the remaining counts pursuant to Rule 8(a).

The Defendants are properly joined under Rule 8(b) because they both participated in the same acts or transactions (the conspiracy) charged in Count One.   Additionally, Counts Two through Seven are alleged to have occurred during the period covered by the charged conspiracy and are specifically charged as overt acts in furtherance of the conspiracy.   In ECF 77, Defendant Campbell alleges, "the Defendants in the instant case do not appear to be properly joined . . ." However, Defendant Campbell apparently concedes: "Unless the Government can proffer evidence linking the Defendant to the co-Defendant's alleged drug dealing in 2011, the prosecution will fail to meet its burden pursuant to Federal Rule of Criminal Procedure Rule 8 . . .").   The Government need not proffer such information – the Third Superseding Indictment (returned after the Defendant filed his motion) clearly alleges that Defendant Campbell conspired with Defendant Washington and others to distribute and possess with intent to distribute heroin from 2010 until the date of Defendant Campbell's arrest in 2016 (*See* ECF 123, ¶ 3).   Nonetheless, the Government voluntarily proffers the following information in accordance with Defendant Campbell's request: At trial, the Government intends to call multiple witnesses (including customers and witnesses who have testified under oath) who will provide information that Defendant Campbell acted together with Defendant Washington and Defendant Shropshire and others to distribute heroin since at least 2010.   This information will include testimony from customers who purchased heroin from Defendants Campbell, Washington, and Shropshire since 2010.   Therefore, joinder of

14

defendants is clearly appropriate and the Third Superseding Indictment meets the requirements of Rule 8(b).

To the extent that Defendant Campbell's motion alleges that the Third Superseding Indictment does not meet any of the basic joinder requirements of Rule 8(a) or 8(b), the motion (ECF 77) should be denied.

### B.     Defendant Washington and Defendant Campbell's Motions for Severance of *Count Two* Fail to Make a Strong Showing of Prejudice and This Case is Not a "Rare Case".

Because Counts One and Two were properly joined in the Third Superseding Indictment, the Defendants' "only recourse is to convince the court that the charges should be severed under Rule 14 – a difficult task." *United States v. Blair*, 661 F.3d 755, 768 (4th Cir. 2011) *citing United States v. Cardwell*, 433 F.3d 378, 387 (4th Cir. 2005) (incidents where joinder of offenses is proper but severance is nevertheless required limited to "rare" cases where "there is a serious risk" that joinder would compromise a specific trial right or "prevent the jury from making a reliable judgment about guilt or innocence."). The Fourth Circuit has held that "[a] defendant making a motion for severance pursuant to Rule 14 has the burden of demonstrating a strong showing of prejudice." *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984) (*citing United States v. Niederberger,* 580 F.2d 63 (3d Cir. 1978), *cert. denied,* 439 U.S. 980 (1978)). The *Goldman* court added that "it is not enough to simply show that joinder makes for a more difficult defense" and "[t]he fact that a separate trial might offer a better chance of acquittal is not a sufficient ground for severance. *Id; see also United States v. Branch*, 537 F.3d 328, 340-41 (4th Cir. 2008).

Courts have recognized that severance can create an unnecessary burden and inefficiency for the Court, the Government, and the witnesses by requiring the presentation of the same or similar case on multiple occasions. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993). Joint trials also serve the interests of justice and avoid the inequity of inconsistent verdicts. *Id.* at 538.

Claims of potential prejudice generally are addressed through limiting instructions rather than the more radical remedy of severance. *Id.*; *United States v. Min*, 704 F.3d 314, 321 (4th Cir. 2013); *United States v. Dinkins*, 691 F.3d 358, 368 (4th Cir. 2012); *United States v. Mir*, 525 F.3d 351, 357-58 (4th Cir. 2008).   The Fourth Circuit has held that a District Court's denial of a motion to sever "should be left undisturbed, absent a showing of clear prejudice or abuse of discretion." *United States v. Branch*, 537 F.3d 328, 341 (4th Cir. 2008) (internal citations omitted).

Both Defendants Washington (ECF 160) and Campbell (ECF 77) request that the Court sever Count Two from the Third Superseding Indictment.   Both Defendants fail to meet their burden ("a difficult task") because they have failed to establish that this heroin drug trafficking conspiracy case is a "rare" case warranting the unusual remedy of severance of counts.   Defendant Washington asks the Court to sever Count Two because he is concerned that allowing the jury to hear evidence of *his own conduct,* including "the extensive drug dealing allegations against the Defendant and others, including perhaps allegations that others have died as a result of the conspiracy's distribution of drugs, is extraordinarily prejudicial and would deprive the Defendant of the opportunity to have a fair trial on Count Two." (ECF 160).   The Defendant does not point to a specific trial right that is violated by the inclusion of Count Two and Count One in the same case against him; instead he alleges that the jury may be swayed by evidence presented to support Count One and will not be able to determine questions of guilt or innocence as to Count Two.   The Defendant's arguments rest on the assumption that the jury will not be able to properly exercise its responsibilities consistent with the Court's instructions.   This is not the "rare" case where a joint trial is appropriate, as contemplated by the Fourth Circuit in *Cardwell*.   Unfortunately, heroin overdose deaths occur with almost daily frequency.   As the incidence of heroin-related overdoses

has skyrocketed in Maryland and nationwide, it is difficult to find a case of large-scale heroin distribution prosecuted federally that does NOT involve a fatal overdose.

The Defendant cites a Maryland state court case, *Bussie v. State of Maryland*, 693 A.2d 429 (Md. Ct. Sp. App. 1997), in which the Court of Special Appeals found that a trial court abused its discretion by failing to sever unrelated assault and drug charges where the evidence was not mutually admissible.  This is distinguishable from this case – Unlike *Bussie*, Count Two involves substantially similar facts and criminal conduct as Count One and the Counts are related and evidence is mutually admissible for both Counts because the heroin distribution resulting in the overdose death of J.L. is an overt act in furtherance of the conspiracy.  Unlike *Bussie*, Count Two occurred during the charged conspiracy in Count One.   The Court's Jury Instructions will adequately inform the jury of the elements the Government must prove in order to meet its burden as to Count One and Count Two, and there is no risk of confusion of issues.

If the case were severed, the result would effectively cause the United States to present, and two different juries to hear, two separate but nearly identical sets of facts because the act of heroin distribution charged in Count Two is also charged as an overt act in Count One.   Requiring the Government to sever Count Two from the Third Superseding Indictment would be inefficient and unnecessarily burdensome on the Government.  Similar witnesses will be called to testify in both trials and the severance will burden the witnesses and the Court.  The Defendant cites no authority for the proposition that in a case involving a conspiracy and specific charged acts of distribution that he is entitled to one jury to hear the conspiracy evidence and a second different jury to hear the facts related to the specific charged act of distribution against him.   The Defendant's argument essentially stands for the proposition that in every narcotics conspiracy, any substantive resulting in death counts must be tried separately because otherwise the jury will be

17

confused by this type of "rare" case.  However, these types of narcotics conspiracy cases are unfortunately routine in this District and the Defendant cannot cite a single case where this Court severed a resulting in death count from a similar drug conspiracy count.  The Defendant seeks a broad severance remedy that creates an unnecessary burden and inefficiency for the Court, the United States, and the witnesses by requiring the presentation of the same case on multiple occasions.  Defendant Washington has failed to meet his burden of demonstrating a strong showing of prejudice and therefore his motion (ECF 160) should be denied.

Defendant Campbell contends that he will be prejudiced by the Government's presentation of evidence of a death resulting from Defendant Washington's distribution of heroin in Count Two. (ECF 77).  However, Defendant Campbell's arguments also rest on the assumption that the jury will not be able to properly exercise its responsibilities consistent with the Court's instructions. Defendant Campbell's argument ignores that overdose deaths are included in Count One of the Third Superseding Indictment, charging him as well as Defendant Washington.  Overt acts included in Count One allege that the conspiracy, in which all Defendants were members, caused fatal and nonfatal overdoses.  (ECF 123 ¶ 4).  During the course of the conspiracy, on December 27, 2011, the Third Superseding Indictment alleges that Defendant Washington distributed heroin in furtherance of the conspiracy, and J.L died as a result of the distribution of this substance.  (ECF 123 ¶ 4).  Among the manner and means of this conspiracy, the Defendants and others "distributed heroin to customers, which resulted in multiple overdoses, including overdose deaths."  (ECF 123 ¶ 1(b)).  Accordingly, the evidence of heroin overdoses, specifically, the distribution of heroin resulting in the death of J.L., is part of the evidence the Government will present in Count One and severing Count Two from the indictment will require presentation of identical evidence in two separate trials.  Severance is not necessary, will unduly burden the Government, and the

Defendants' motions are not supported by precedent favoring joinder of Defendants and Counts in conspiracy cases like this one.  Therefore, the Defendants' motions to sever counts (ECF 77, 160) should be denied.

### C. Defendant Washington and Defendant Campbell's Motions for Severance of *Defendants* Fail to Make a Strong Showing of Prejudice and This Case is Not a "Rare Case".

In his motion to sever defendants (ECF 75), Defendant Washington baldly asserts that he and his co-Defendant, Defendant Campbell, "may present mutually antagonistic defenses" and he "may seek to call Mr. Campbell as a witness on his behalf."  No specifics are raised nor facts asserted to support these claims.  Defendant Washington also complains that the Government may introduce statements made by Defendant Campbell at trial and may seek to admit 404(b) evidence against Defendant Campbell which would prejudice Defendant Washington.  Again, no specifics are alleged.  Defendant Campbell (ECF 77) alleges that he will be "substantially prejudiced" by being involved in a trial in which Defendant Washington is charged with distribution of heroin resulting in death and Defendant Campbell claims that he is dissimilar to Defendant Washington because there is "no evidence linking the Defendant to any heroin overdose deaths."  This claim is false and the Defendants' motions fail.

Generally speaking, "when defendants are indicted together, they should be tried together," *United States v. Dinkins*, 691 F.3d 358, 368 (4th Cir. 2012), particularly where a conspiracy is charged, *United States v. Parodi*, 703 F.2d 768, 779 (4th Cir. 1983).  The Supreme Court has explained:

> There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.  For these reasons, we repeatedly have approved of joint trials.
>
> *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (internal citations omitted).

Finally, "[j]oinder is highly favored in conspiracy cases, over and above the general disposition [supporting] joinder for reasons of efficiency and judicial economy." *United States v. Tedder*, 801 F.2d 1437, 1450 (4th Cir.1986); *see also United States v. Mouzone,* 687 F.3d 207, 218-19 (4th Cir. 2012) (affirming joinder of RICO and drug counts where distribution was alleged to be part of the racketeering enterprise); *United States v. Branch*, 537 F.3d 328, 340-41 (4th Cir. 2008) (affirming joinder of drug and firearm charges resulting from vehicle stop and "factually unrelated" drug charges based on prior conduct).

### 1. Severance is Not Appropriate Simply Because Evidence Against Another Defendant is Purportedly Stronger or More Inflammatory and Defendant Campbell's Severance Request Fails To Establish a Strong Showing of Prejudice.

Defendant Campbell alleges that he will be "substantially prejudiced by being involved in a trial wherein the Government is alleging that the co-Defendant, who is the Defendant's half brother, distributed heroin that resulted in the death of a human being." However, no right to severance arises because the evidence against one or more defendants is stronger, or more inflammatory, than the evidence against other defendants. *See e.g., Dinkins,* 691 F.3d at 368-69 (approving joinder of capital and noncapital defendants charged in the indictment with committing different murders in furtherance of a narcotics conspiracy). Furthermore, as discussed in the prior sections, Count One includes allegations that Defendant Washington and others "distributed heroin to customers, which resulted in multiple overdoses, including overdose deaths" and Defendant Washington's distribution of heroin resulting in death of J.L. is an overt act that will be presented in furtherance of the conspiracy. It is well settled that, "[b]arring special circumstances, individuals indicted together should be tried together. *United States v. Brugman*, 655 F.2d 540, 542 (4th Cir. 1981). "Generally, we adhere to the rule that defendants charged with participation in the same conspiracy are to be tried jointly." *United States v. Akinkoye*, 185 F.3d 192, 197 (4th

Cir. 1999); *see also United States v. Gross*, 199 F. App'x 219, 232 (4th Cir. 2006); *United States v. Tedder*, 801 F.2d 1437, 1450 (4th Cir. 1986) ("[J]oinder is highly favored in conspiracy cases, over and above the general disposition towards joinder for reasons of efficiency and judicial economy."). Defendant Campbell's motion fails to cite any "special circumstances" which warrant severance from Defendant Washington. To promote judicial efficiency and avoid the inequity of inconsistent verdicts, a joint trial for Defendant Washington and Defendant Campbell is far preferable to two or more separate trials on Count One, the conspiracy and the Defendant's motion (ECF 77) should be denied.

###### 2. Defendant Washington's "Finger-Pointing" at Co-Defendant Campbell is an Insufficient Basis for Severance.

The Government has no basis to believe that Defendant Washington and Defendant Campbell are likely to present antagonistic defenses, and the Defendant has not alleged facts supporting his motion. Nonetheless, the presence of conflicting or antagonistic defenses alone does not require severance. *See Zafiro v. United States*, 506 U.S. 534, 538 (1994). "The mere presence of hostility among defendants . . . or the desire of one to exculpate himself by inculpating another [are] insufficient grounds to require separate trials." *United States v. Spitler*, 800 F.2d 1267, 1271 (4th Cir. 1986) (internal quotations marks and citation omitted). "The rule requires more than finger pointing. There must be such a stark contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other, or that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *United States v. Najjar*, 300 F.3d 466, 474 (4th Cir. 2002) (internal citation omitted). The Fourth Circuit has held that "speculative allegations" are insufficient to warrant severance. *Id.* at 473. The Defendant has not presented any evidence or argument establishing that the core of his defense is so stark in contrast to the core of Defendant Campbell's defense that

the jury will unjustifiably infer that both are guilty.  Accordingly, Defendant Washington's motion

(ECF 75) should be denied.

> **3.      Defendant Washington's Claim That Defendant Campbell Will Testify as a Witness on His Behalf is Highly Improbable and this Unlikely Assertion Alone Does Not Warrant Severance.**

After vaguely alleging that he intends to present a defense that is antagonistic to Defendant

Campbell, Defendant Washington reverses course and alleges that Defendant Campbell may be a

witness who will agree to testify on his behalf.  However, "A defendant's attempt to have [his]

trial severed from that of a co-defendant is far less likely to succeed when the request is based on

the asserted need for a co-defendant's testimony."  *United States v. Reavis*, 48 F. 3d 763 (4th Cir.

1995).  To support his motion for severance on this ground (ECF 75), it is the Defendant's burden

to establish: (1) a bona fide need for the testimony of his co-defendant, (2) the likelihood that the

co-defendant would testify at a second trial and waive his Fifth Amendment privilege, (3) the

substance of his co-defendant's testimony, and (4) the exculpatory nature and effect of such

testimony.  *Id.*  All four factors must be established for defendant to be entitled to severance.  Here,

the Defendant has failed to even attempt to establish any of these factors by alleging requisite facts

or theories of how Defendant Campbell's testimony is necessary to his defense, and instead only

alleges "Mr. Washington may seek to call Mr. Campbell as a witness on his behalf . . ."  Such a

bald assertion does nothing to support his claim that severance is warranted and Defendant

Washington's motion on this ground must be denied.

> **4.      There Are No *Bruton* or *Crawford* Issues Posed by a Joint Trial with Defendant Washington and Defendant Campbell.**

Defendant Washington asserts that the Government may introduce statements made by

Defendant Campbell that would not be admissible against Defendant Washington; however, the

Defendant fails to cite a single example of such an inadmissible statement in support of this

contention.  Fed. R. Evid 801(d)(2)(E) provides, as an exception to the hearsay rule, for the admission of statements by co-conspirators made during the course and in furtherance of the conspiracy.  To admit statements under this rule, the Government must show, by a preponderance of the evidence: (1) that there was a conspiracy involving the declarant and the party against whom admission of the evidence is sought; and (2) that the statements at issue were made in furtherance and in the course of that conspiracy.  *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  "Most courts, including the Fourth Circuit, construe the in furtherance requirement so broadly that even casual relationships to the conspiracy suffice to satisfy the exception [to the hearsay rule]."  *United States v. Smith*, 441 F.3d 254, 261 (4th Cir. 2006).

Severance may only be required when a non-testifying co-defendant's confession to law enforcement or other individuals outside the conspiracy naming the defendant as a participant in the crime is admitted.  Such is not the case here -- there are no confessions naming Defendant Washington and no potential Sixth Amendment violations posed by Defendant Campbell's statements.  Severance is not required here because none of Defendant Campbell's statements to agents at the time of his arrest are "facially incriminating" statements about Defendant Washington.  *Richardson v. Marsh*, 481 U.S. 200, 208-09 (1987) (severance is required only if co-conspirator statements are "facially incriminating" statements and not merely statements which only become incriminating when linked to other evidence).[6]  Defendant Washington has not met his burden, much less specifically alleged any statements made by Defendant Campbell which are "facially incriminating" as to Defendant Washington and were not co-conspirator statements made in furtherance of the conspiracy.  Nor is the Government aware of any such facially incriminating statements; therefore the Defendant's motion to sever on this basis (ECF 75) should be denied.

---

[6] Defendant Campbell's statements are discussed in the Factual Summary, part F.

### 5.      Defendant Washington Is Not Prejudiced By Rule 404(b) Evidence the Government May Use Against Defendant Campbell.

Defendant Washington, without explanation, asserts that severance is warranted because "the Government may seek to admit alleged wrongdoing by Mr. Campbell that would not be admissible against Mr. Washington."  (ECF 75).  With respect to potential 404(b) evidence, Defendant Washington has a much lengthier criminal history than Defendant Campbell, yet Defendant Washington claims he will be the one prejudiced by a joint trial.  Defendant Washington is not entitled to severance merely because he believes any 404(b) evidence against Defendant Campbell may be inflammatory.  *United States v. Hall*, 93 F.3d 126, 131 (4th Cir. 1996) (rejecting defendant's argument "evidence brought in against his co-defendant . . . on [a related] murder charge may have 'inflamed the passions' of the jury"); *United States v. Brooks*, 957 F.2d 1138, 1145 (4th Cir. 1992).  Defendant Washington cannot articulate a single plausible theory as to how he will be prejudiced by any 404(b) evidence the Government seeks to admit against Defendant Campbell.[7]  Accordingly, this motion (ECF 75) should be denied.

### II.     Defendant Washington's Motion to Suppress Identification Evidence and Request for Evidentiary Hearing Should be Denied (ECF No. 161)

Defendant Washington was charged by Indictment on February 17, 2016, was arrested and detained, and thereafter filed several pretrial motions (ECF 13, 14, 15, and 16).  Defendant Washington's Motion to Suppress Identification Evidence (ECF 13 – requesting that the Court "suppress all evidence and testimony concerning any alleged pre-trial out-of-court identifications and any attempted in-court identifications of Mr. Washington"), and the Government's Response thereto (ECF 33) were among the subjects of a pretrial motions hearing held on July 5, 2016.  During this hearing, the Government presented evidence and argument with respect to the

---

[7] In response to Defendant Washington's motion for 404(b) evidence, the Government has identified criminal convictions it may seek to use at trial.  *See infra, III.*

identification procedures used with witnesses.  The Court ruled on the Defendant's motion (ECF 13) at the hearing and later issued an Order (ECF 39) denying the Defendant's Motion to Suppress Identification Evidence (ECF 13) with respect to Witness 2, noting that the Defendant had withdrawn his motion with respect to Witness 1 in light of representations made by the Government.  Thereafter, current counsel was appointed to represent Mr. Washington on January 25, 2017 (ECF 114).

On April 26, 2017, the Defendant filed a motion to suppress identification evidence and request for an evidentiary hearing.  (ECF 161).  This motion is essentially a request for discovery that has already been provided, specifically in response to the Defendant's prior motion.  (*See* ECF 33, 33-1).  This part of the motion should be denied as moot.  Additionally, the Defendant's motion requests an evidentiary hearing on the identification evidence – but overlooks that the hearing has already occurred.  In response to this motion, rather than restate its entire response, the Government hereby incorporates its prior response brief (ECF 33), the testimony presented at an evidentiary hearing on July 5, 2016, and the Court's ruling at the hearing and its ensuing Order denying the Defendant's previous motion to suppress identification evidence with respect to Witness 2 and withdrawing the Defendant's motion with respect to Witness 1 (ECF 39).   The motion is an effort by the Defendant to re-litigate the issues already decided by this Court and the Defendant has failed to avail himself of the filings on the docket.[8]  Because the issues raised by ECF 161 have already

---

[8] On April 26, 2017, Government counsel emailed defense counsel for Mr. Washington and reminded counsel that the Defendant had filed a duplicative motion regarding an issue that had been litigated by prior counsel and a motion that had been previously denied by Judge Bredar after an evidentiary hearing.  Suspecting that this was an oversight on defense counsel's behalf, the Government asked if the Defendant would kindly withdraw his motion to save briefing and the Court's time addressing this duplicative issue.  The Government received no response to its email and as of the date of this filing, the Defendant has not withdrawn his duplicative motion.

been litigated, the remainder of the Defendant's motion should be denied pursuant to the law of the case.

### III.    Defendant Washington's Motion for Disclosure Pursuant to Fed. R. Evid. 404(b) and 609 should be Denied as Moot (ECF No. 76).

Defendant Washington seeks notice of other crimes evidence to be used by the United States at trial pursuant to Rule 404(b), as well as notice of any criminal convictions it seeks to utilize for impeachment purposes should Defendant Washington testify on his own behalf. Defendant Washington also seeks notice of other crimes evidence to be used by the United States against Defendant Washington's co-defendants.

To date, the United States has uncovered the following information that is relevant to his motion. The United States may file a motion in limine on or before the Court-scheduled deadline of September 29, 2017, seeking to use the criminal convictions set forth below as Rule 404(b) evidence against Defendant Washington, Defendant Campbell, Defendant Shropshire, and Defendant Wells. The United States will use these convictions pursuant to Rule 609 if any of the Defendants choose to testify. Although the United States has previously provided this information to defense counsel through discovery, it is now specifying which criminal convictions it may use as Rule 404(b) evidence.[9] Accordingly, the Defendant's motion for disclosure (ECF 76) should be denied as moot.

---

[9] Although the Court's deadline for motions in limine is September 29, 2017, the Government is endeavoring to provide Defense Counsel with specific Rule 404(b) and Rule 609 information it may use well in advance of the court imposed deadline. The Government asks the Court to allow it to promptly bring to the attention of the Defendants any new information it may learn of that is not specified herein and may be admitted pursuant to Rule 404(b) or 609, and to thereafter file a motion in limine with the Court. At this time, the United States does not intend to introduce any other evidence (wrongs or acts) as 404(b) material, but will promptly advise the Defendant and thereafter timely file a motion in limine if it does intend to do so.

A. **Washington's Relevant Criminal History**

On February 9, 2009, Defendant Washington was convicted of CDS Possession – not marijuana in District Court of Maryland for Baltimore City, Baltimore, Maryland, and was sentenced to two years imprisonment, suspend all. *See* Docket No. 4B01998588.

On April 6, 2010, Defendant Washington was convicted of CDS Possession – not marijuana in District Court of Maryland for Baltimore City, Baltimore, Maryland, and was sentenced to four years imprisonment; suspend three years and nine months. *See* Docket No. 3C00311776.

On March 7, 2013, Defendant Washington was convicted of CDS Possession – not marijuana in District Court of Maryland for Baltimore City, Baltimore, Maryland, and was sentenced to six months imprisonment. *See* Docket No. 6B02168851.

On October 4, 2013, Defendant Washington was convicted of CDS possession with intent to manufacture, distribute, dispense in Circuit Court of Maryland for Baltimore City, Baltimore, Maryland, and was sentenced to fifteen years imprisonment, with fourteen years, three months, twenty seven days suspended, followed by five years of probation. Defendant Washington violated his probation. *See* Docket No. 113053027.

On October 4, 2013, Defendant Washington was convicted of Second Degree Assault in Circuit Court of Maryland for Baltimore City, Baltimore, Maryland, and was sentenced to ten years imprisonment, with nine years, eight months, twenty-seven days suspended, followed by five years of probation. Defendant Washington violated his probation. *See* Docket No. 113053028.

On October 28, 2013, Defendant Washington was convicted of CDS manufacturing/ distribution-narcotic in the Circuit Court of Maryland for Baltimore County, Baltimore, Maryland,

and was sentenced to eighteen months in prison, and his probation was later closed as unsatisfactory. *See* Docket No. 03K12000572.

### B.      Campbell's Relevant Criminal History

On April 17, 2009, Defendant Campbell was convicted of Second Degree Assault in the Circuit Court of Maryland for Baltimore County, Baltimore, Maryland, and was sentenced to two years imprisonment, with one year and eleven months suspended and the remainder to be served on weekends.  Defendant Campbell violated his supervision.  *See* Docket No. 03K08000467.

On November 11, 2012, Defendant Campbell was convicted of CDS Possession – marijuana in the District Court of Maryland for Baltimore City, Baltimore, Maryland.  The Government is not aware of any sentence of imprisonment.  *See* Docket No. 1B02199485.

On May 2, 2013, Defendant Campbell was convicted of Second Degree Assault in the District Court of Maryland for Baltimore City, Baltimore, Maryland and was sentenced to eighteen months imprisonment, suspend all.  *See* Docket No. 2B02205464.

### C.      Shropshire's Relevant Criminal History

On May 3, 2005, Defendant Shropshire was convicted of possession with intent to manufacture/distribute/dispense in the Circuit Court of Maryland for Baltimore City, Baltimore, Maryland, and was sentenced to five years custody, with four years, three months and eight days suspended, followed by three years of probation.  Shropshire violated his probation on December 23, 2008.  *See* Docket No. 1014170015.

On December 2, 2011, Defendant Shropshire was convicted of possession of CDS in the Circuit Court of Maryland for Baltimore City, Baltimore, Maryland, and was sentenced to two days imprisonment.  *See* Docket No. 811313036.

On October 4, 2013, Defendant Shropshire was convicted of possession with intent to distribute in the Circuit Court of Maryland for Baltimore City, Baltimore, Maryland, and was

sentenced to six years custody, with five years, eleven months and twenty seven days suspended, followed by three years pf probation. *See* Docket No. 112171003.

On February 26, 2014, Defendant Shropshire was convicted of possession of CDS in the Circuit Court of Maryland for Baltimore City, Baltimore, Maryland, and was sentenced to one year custody, with eleven months and twenty nine days suspended, followed by one year of probation. Defendant Shropshire violated probation on October 28, 2014. *See* Docket No. 814010003.

### D.     Wells' Relevant Criminal History

On December 7, 2006, Defendant Wells was convicted of CDS Possession with intent to manufacture, distribute and dispense in the District Court of Maryland for Baltimore City, Baltimore, Maryland, and was sentenced to three years imprisonment, two years, eleven months and twenty nine days suspended, followed by three years of probation. Defendant Wells violated his probation. *See* Docket No. 106240058.

On December 7, 2006, Defendant Wells was convicted of handgun in vehicle (in connection with a drug trafficking crime), in the District Court of Maryland for Baltimore City, Baltimore, Maryland, and was sentenced to three years imprisonment, with two years, eleven months and twenty-nine days suspended, followed by three years of probation. *See* Docket No. 106240059.

On July 10, 2008, Defendant Wells was convicted of CDS Possession – marijuana (guilty) in District Court of Maryland for Baltimore County, Baltimore, Maryland, and was sentenced to ten days imprisonment. *See* Docket No. 5C00286088.

On September 15, 2009, Defendant Wells was convicted of CDS manufacturing, distribution, dispensing in the District Court of Maryland for Baltimore City, Baltimore, Maryland, and received a sentence of probation after conviction for a term of five years, suspend four years,

followed by three years of probation.  Defendant Wells violated his probation.  *See* Docket No.

108133018.

IV.    **Defendant Campbell's Motion to Suppress Statements (ECF 79) and Motion to Suppress Tangible and Derivative Evidence (ECF 81) Should be Denied.**

A.    **In light of the Government's Concession regarding One Pre-Miranda Question and Answer, Defendant Campbell's Other Statements Were Not Elicited in Violation of his Fifth Amendment Rights and Should Not Be Suppressed.**

Defendant Campbell filed a motion to suppress incriminating statements made by

Defendant Campbell after law enforcement arrested him pursuant to a federal arrest warrant.  The

Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness

against himself . . ." U.S. Const., amend V.  *Miranda* warnings are required when a subject is

interrogated while in custody.  *Miranda v. Arizona*, 384 U.S. 436 (1966).  Statements *volunteered*

by a Defendant while he is in custody are not implicated by *Miranda.*  "Volunteered statements of

any kind are not barred by the Fifth Amendment and their admissibility [is not implicated by

*Miranda*].  *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) (holding that Miranda did not apply

where defendant volunteered statements while being transported to jail in response to conversation

between policemen).   Additionally, the Fourth Circuit has held that casual conversation or

statements of agents about evidence which were not designed to elicit an incriminating response

do not cause an "interrogation" for *Miranda* purposes.  *See United States v. Payne*, 954 F.2d 199

(4th Cir. 1992) (declaratory statement made by federal agent that police had found a gun at the

defendant's house did not constitute an interrogation); *United States v. Wright*, 991 F.2d 1182,

1186 (4th Cir. 1993) (voluntary statements made in the absence of any interrogation were not

subject to *Miranda*); *United States v. Manbeck*, 744 F.2d 360, 379 (4th Cir. 1983) ("This Court

finds that the failure to give Brogden the *Miranda* warning when he was placed in the patrol car

did not violate his Fifth Amendment rights because he was not subjected to a custodial

interrogation when the statements in question were made.").   For example, a detective's question, "what do you mean?", after an arrestee is in custody and has voluntarily proffered information does not constitute a custodial interrogation.  *United States v. Johnson*, 734 F.3d 270, 275–76 (4th Cir. 2013).   There are three categories of statements made by Defendant Campbell after his arrest on May 24, 2016.

> **1.      The United States Does Not Intend to Use Campbell's Statement to Detective Vivino Prior to his Transport.**

The Government concedes that immediately after Defendant Campbell was placed in handcuffs, Detective Vivino asked Detective Campbell one question after Campbell's arrest but prior to giving him his *Miranda* warnings; accordingly, the Government represents that it will not use the following question and answer at trial: Detective Vivino asked Campbell how much heroin he had located in Campbell's left pocket, and Campbell stated "it's like 10 grams".

> **2.      Defendant Campbell's Statements to Law Enforcement After His Arrest and During Transport Were Voluntary and Not the Product of Questioning Designed to Elicit an Incriminating Response.**

Later, Defendant Campbell was transported to the Baltimore County Parkville Precinct by law enforcement officers.  Defendant Campbell was not "interrogated" for *Miranda* purposes while he was transported to the Baltimore County Parkville Precinct after his arrest on May 24, 2016.   According to the report of his arrest, Defendant Campbell freely made the following unsolicited statements: (1) he requested to stop at 1208 Glen Haven to speak with his mother; (2) he asked, "Who is your informant?"; (3) he stated, "You always have an informant"; (4) he began to ask questions about his brother, Antoine Washington, and the facts of his arrest and (5) he stated, "I don't have any bodies on me" in apparent reference to Defendant Campbell's contention that he had not sold heroin to a user who ultimately died from using the heroin. (*Id.* at 2).  Defendant Campbell was not interrogated when he made these statements and he made these statements

voluntarily.   Any casual conversation by law enforcement was not designed to elicit these statements and therefore the Defendant's motion to suppress the statements he voluntarily made during his transport should be denied.

> **3.     Defendant Campbell Made a Knowing and Voluntary Waiver of His Fifth Amendment Rights After Signing a *Miranda* Form and Consenting to an Interview at the Precinct.**

Defendant Campbell was verbally advised of his *Miranda* rights (*See* Exhibit 2), received a Baltimore County *Miranda* Rights Waiver form which advised him of his *Miranda* rights (*See* Exhibit 4) and voluntarily waived his *Miranda* rights by signing the form.  (*See Id.*).  Defendant Campbell signed his name beneath the line that reads, "I have read and understand this explanation of my rights.  My decision to waive these rights and be interviewed is free and voluntary on my part." (*See Id.*).  The Defendant then voluntarily made the following statements to law enforcement in response to the following questions: (6) Defendant Campbell was asked about the money that Davis had in her pocket, and Campbell stated that Davis holds the money for Campbell because she can count better than him; (7) Defendant Campbell then stated that he does not have a good source for heroin; (8) Defendant Campbell said, "I call around to corner boys to get grams."; (9) when Defendant Campbell was asked about how many grams he gets at a time, Defendant Campbell said, "like 20 grams"; and (10) Campbell stated he was done with "this life", referring to selling drugs, and that he was going to get a job when he finished with this situation (Exhibit 2 at 3).  Because Defendant Campbell freely and voluntarily made these statements after receiving and acknowledging his *Miranda* rights, the Defendant's motion (ECF 79) should be denied.

**B.** **The DEA Lawfully Seized Evidence From Defendant Campbell's Person and Ms. Davis's Acura When Defendant Campbell was Arrested Pursuant to an Arrest Warrant.**

**1.** **Defendant Campbell Does Not Have A Reasonable Expectation of Privacy in Ms. Davis' Acura.**

To challenge a search successfully under the Fourth Amendment, a defendant must have "a reasonable expectation of privacy" in the place that was searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). Regarding vehicle searches, the Fourth Circuit has held that *passengers* in searched vehicles have no reasonable expectation of privacy in regard to items found in another person's vehicle. *United States v. Carter*, 300 F. 3d 415, 421 (4th Cir. 2002); *United States v. Rusher*, 966 F.2d 868, 874-75 (4th Cir. 1992) (finding the defendants had no reasonable expectation of privacy in truck because defendants claimed no ownership or possessory interest in the truck and have shown no special circumstance that would give them a greater expectation of privacy in the truck than passengers normally have). The Defendant bears the burden of proving that he has a reasonable expectation of privacy. *Id.* Here, the Defendant was stopped when he was riding as a passenger in an Acura that he did not own but rather was owned by the driver of the Acura, Ms. Davis. The Defendant has not set forth facts to establish standing to allow him to contest the search of Ms. Davis's Acura. He had no reasonable expectation of privacy in Ms. Davis' Acura. Accordingly, the inquiry should end here, and the Defendant's motion (ECF 81) should be denied.

**2.** **The Search of Defendant Incident to His Arrest Was Valid Because Law Enforcement Had a Federal Arrest Warrant for Defendant Campbell.**

The Defendant claims that the searches of the Defendant's person and Ms. Davis's vehicle were without probable cause. The Defendant briefly mentions but then entirely ignores the fact that law enforcement had received a federal arrest warrant for Defendant Campbell. The

Defendant contends that officers engaged in a warrantless search of his person and Ms. Davis's vehicle.  The Defendant does not allege that the complaint in support of the arrest warrant contained insufficient probable cause or otherwise challenge the Criminal Complaint issued by the Magistrate Judge Gallagher.[10]

Searches incident to arrest are a well-established exception to the warrant requirement of the Fourth Amendment.  Police can conduct a warrantless search of an arrestee even if they have no reason to believe that the arrestee possesses weapons or evidence.  *See New York v. Belton*, 453 U.S. 454, 461 (1981); *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979).  The scope of the search includes the area within the arrestee's immediate control.  *Chimel v. California*, 395 U.S. 752, 763 (1969) ("the area from within which [the arrestee] might gain possession of a weapon or destructible evidence").  Here, the officers search of Defendant Campbell's person was a routine search after he was arrested on the federal arrest warrant.  Under clearly established law, law enforcement officers were authorized to search Defendant Campbell for weapons and contraband.  The heroin and cash seized from Defendant's Campbell's person and the cell phone he dropped when he resisted arrest should not be suppressed and Defendant Campbell's motion (ECF 81) should be denied.

---

[10] The Criminal Complaint and Affidavit in support thereof are attached as Exhibit 6.  The Defendant does not challenge the affidavit submitted in support of the Criminal Complaint, which was supported by ample probable cause.  Even if he had challenged the Criminal Complaint and Affidavit for insufficient probable cause, which he has not, law enforcement acted in good faith reliance on the arrest warrant and criminal complaint issued by the Honorable Stephanie A. Gallagher, United States Magistrate Judge.  *See generally, United States v. Leon*, 468 U.S. 897 (1984).

**3.** **Even if the Court Assumes Defendant Campbell has Standing to Contest a Search of Ms. Davis's Acura, Law Enforcement Was Authorized to Search the Acura Incident to Defendant Campbell's Arrest, or Alternatively, Pursuant to the Automobile Exception.**

The Defendant cannot challenge the search of Ms. Davis's Acura because he was a passenger in the vehicle, he did not own it, and he cannot establish standing or that he had a reasonable expectation of privacy in Ms. Davis' Acura.  Even if he could establish that he had a reasonable expectation of privacy in Ms. Davis' Acura, law enforcement was entitled to search it under two exceptions to the warrant requirement.

First, under the automobile exception, law enforcement may search the passenger compartment of a vehicle without a search warrant when they have probable cause to believe it contains contraband or evidence of criminal activity.  *See California v. Acevedo*, 500 U.S. 565, 580 (1991); *United States v. Ross*, 456 U.S. 798, 804-09 (1982). *United States v. Johns*, 469 U.S. 478 (1985). This may include containers belonging to passengers.  *See Wyoming v. Houghton*, 526 U.S. 295 (1999).  Here, Defendant Campbell was found to possess a substance believed to be heroin immediately after exiting Ms. Davis's Acura.  That fact alone establishes probable cause to believe that additional evidence of narcotics crimes (including violations of 21 U.S.C. § 846 for which the arrest warrant issued) may have been contained within the vehicle that Defendant Campbell had just exited.  Additionally, as outlined in the affidavit of TFO McDougall in support of the Criminal Complaint (Exhibit 6), law enforcement completed a controlled purchase of heroin from Defendant Campbell just a couple of weeks prior to his arrest, Defendant Campbell communicated extensively with Defendant Washington over recorded jail phones about their illicit drug trafficking operation, and a cooperating source had identified Defendant Campbell as his supplier of heroin.  These facts supported a probable cause search of the vehicle that Defendant Campbell had been removed from immediately prior to his arrest.

Second, even if the officers did not have probable cause to search the vehicle, the officers undoubtedly had reason to believe that the vehicle contained evidence of the offense of arrest, conspiracy to distribute heroin, in violation of 21 U.S.C. § 846. The arrest of an occupant of a vehicle will justify a search of the passenger compartment of a car, and closed containers within it, even after police have exclusive control of the vehicle. *New York v. Belton*, 453 U.S. 454, 460, 462 (1981). Searches of a vehicle incident to arrest of its recent occupant are governed by a two-part rule: such a search is permissible if either: (1) the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search; *or* (2) the officer has reason to believe that the vehicle contains evidence of the offense of arrest. *Arizona v. Gant*, 556 U.S. 332 (2009). Defendant Campbell was secured so the first prong does not apply. However, the second prong does apply because law enforcement had reason to believe that the vehicle contained evidence of the offense of arrest (as articulated above based on the seizure of heroin from Campbell's person, and the facts known to law enforcement including those in the Criminal Complaint attached as Exhibit 6).

Law enforcement recovered a cellular phone from the passenger seat where Defendant Campbell was seated, a digital scale with white powder residue in the passenger door map book pocket, a cellular phone from the center console, and $2,260 from Ms. Davis's pocket.[11] Law enforcement were authorized to search these locations and for these items because it had probable cause to believe that evidence of a heroin trafficking conspiracy were in Ms. Davis's Acura, or, at a minimum, law enforcement had reason to believe that Ms. Davis's Acura contained evidence of

---

[11] Law enforcement observed the large sum of money falling from Davis' rear pocket of her hospital scrubs. (Exhibit 2 at 2). This evidence was in plain sight and lawfully seized.

a heroin trafficking conspiracy.  Therefore, the Defendant's motion to suppress (ECF 81) should be denied.

## V.  Defendant Campbell's Motion for Leave to Amend, Supplement, Withdraw and/or File Additional Motions (ECF 78) and Defendant Campbell's Motion to Adopt Motions of Co-Defendants (ECF 80) Should be Denied.

Defendant Campbell seeks leave to supplement and/or file additional motions.  The Court has previously extended the deadlines for filing of motions and responses to accommodate all parties in this matter.  Defendant Campbell has not articulated a basis for this Court to believe that additional motions are necessary.  This motion should be denied.  The Government does not oppose Defendant Campbell's motion for leave to withdraw his motions.

Defendant Campbell vaguely asks the Court to adopt, by reference, motions filed by co-defendants (ECF 80).  Defendant Campbell provides no such reference, and has provided no notice to the United States of which motions he seeks to adopt.  Defendant Campbell provides no such facts in support of his motion to adopt any of the related motions filed by his co-Defendants.  Therefore, the United States requests that the motion by Defendant Campbell to adopt filings of his co-defendants be denied.

## VI.  Defendant Shropshire's Omnibus Motions (ECF No. 144) Have No Merit and Should be Denied.

### A.  Shropshire's 12(b)(4)(B) Designation Request is Moot.

Defendant Shropshire requests notice of the Government's intent to use any evidence that the Defendant may be entitled to discover under Rule 16.  However, the Government has already produced all Rule 16 evidence in its possession and reserves the right to use any of the evidence it has produced to the Defendant thus far.  The Government anticipates filing a trial exhibit list prior to the Pretrial Conference scheduled for October 6, 2017.  Accordingly, the Defendant's motion (ECF No. 144(1)) should be denied as moot.

**B.     The Defendant's Motion Should be Denied as Moot Because the Defendant Agreed to an Early Jencks Discovery Deadline of One Week Prior to Trial.**

The Defendant agreed to an early Jencks disclosure of one week prior to trial.  *See* Exhibit 5.  In the Discovery Agreement with the Government, the Defendant agreed not to file any motion with the Court which seeks discovery material, including, but not limited to, Jencks material (*Id.* at 2).  The Defendant agreed that if he filed such a motion, the discovery agreement would be null and void and the Government would not be required to produce any Jencks material until the first day of trial.  (*Id.* at 2).  The Defendant breached the agreement by filing ECF No. 144 and asks the Court to impose a deadline of production of Jencks material thirty days prior to trial.  However, the Jencks Act and Rule 26.2 require disclosure of witness statements no later than the beginning of cross-examination of that witness.  Earlier production may be made voluntarily, but the Jencks Act was enacted, in part, "to clarify that the Government need not disclose such statements to the defense until after the Government witness has testified against the defendant on direct examination in open court." *United States v. Coppa,* 267 F.3d 132, 145 n.10 (2d Cir. 2001). *See also* S. Rep. No. 981, 85th Cong., 1st Sess. 4 (1957) ("[I]t is the specific intent of the bill to provide for the production of statements, reports, transcriptions or recordings, as described in the bill, after the Government witness has testified against the defendant on direct examination in open court, and to prevent disclosure before such witness has testified."). This timing rule was initiated "out of concern for witness intimidation, subornation of perjury, and other threats to the integrity of the trial process. *United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir., 1988).

The Government voluntarily offered to provide Jencks material (along with related *Giglio* material such as witnesses' plea agreements, criminal convictions, and prior inconsistent statements) *no later than one week prior to the first day of trial*.  The Defendant accepted this offer and bound himself to it by signing a discovery agreement with the Government. (Exhibit 5).  In

38

accordance with the discovery agreement, the Government will provide Jencks material at least one week prior to trial and the Defendant's motion (ECF No. 144(2)) should be denied based on this representation and Exhibit 5.

      **C.**    **The United States Defers to the Court Regarding its Preferences and Standard Practices for Voir Dire.**

Defendant Shropshire demands leave to individually voir dire every prospective juror outside the presence of any other prospective juror, and for leave to conduct attorney voir dire. Defendant Shropshire fails to provide the court with a list of questions that he believes must be asked of jurors by attorneys rather than the Court, or asked individually and outside the presence of other jurors. Accordingly, the United States cannot effectively respond to Defendant Shropshire's request and instead the United States defers to the Court's standard practices and procedures for voir dire and asks that the Court deny the Defendant's motion (ECF No. 144(3)).

      **D.**    **Shropshire's Request for Leave to File Additional Motions Should be Denied.**

In his Omnibus Motion, Defendant Shropshire seeks leave to file additional motions. The Court has previously extended the deadlines for filing of motions and responses to accommodate all parties in this matter. Defendant Shropshire has not articulated a basis for this Court to believe that additional motions are necessary. This motion (ECF No. 144(4)) should be denied.

**VII.**    **Defendant Shropshire's Motion to Suppress Evidence Seized from the Residence Located at 3007 Harview Avenue Pursuant to a State Search and Seizure Warrant Should be Denied as Moot (ECF No. 145).**

The Defendant filed a motion to suppress evidence seized by Baltimore Police Department officers from his residence located at 3007 Harview Avenue, Baltimore, Maryland on or about October 11, 2016. As set forth in the Factual Summary, Section E, the Government represents that it will not seek to introduce evidence seized from 3007 Harview Avenue from the Kia Soul on that property at trial. Accordingly, the Defendant's motion (ECF No. 145) should be denied as moot.

## CONCLUSION

Each of the Defendants' pre-trial motions should be denied.

Respectfully submitted,

Stephen M. Schenning
Acting United States Attorney

By: _____/s/_____
Derek E. Hines
Leo J. Wise
Assistant United States Attorneys
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800

Dated: May 15, 2017

**CERTIFICATE OF SERVICE**

I hereby certify on this 15th day of May, 2017 that I caused a copy of the foregoing Response to be served on counsel for all defendants by filing with the Court's Electronic Court Filing system.

_____/s/_____
Derek E. Hines